Karl A. Schweikert, Esq.
Nevada Bar No. 13756, California Bar No. 291497
Appearance LR IA 11-1(b)(1)
KDH Law
2101 Stone Blvd., Suite 115
West Sacramento, CA 95691
Telephone: 916.993.5226
Fax: 916.883.3610
Email: Karl@KDHendrickson.com

LR IA 11-1(b)(2) Designated Service Attorney
Cody S. Mounteer, Esq.
Marquis Aurbach
Las Vegas, NV 89145

Attorneys for Plaintiffs MIKHAIL EDUCATION CORPORATION
and MIKHAIL FAMILY PARTNERSHIP

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MIKHAIL EDUCATION CORPORATION, a Nevada corporation, and MIKHAIL FAMILY PARTNERSHIP, a Nevada general partnership<br><br>        Plaintiffs,<br><br>v.<br><br>MICHAEL GERARD NAESSENS, an individual<br><br>        Defendant. | Case No.<br><br>Dept. No.<br><br>**COMPLAINT FOR VIOLATION OF THE STORED COMMUNICATIONS ACT (18 U.S.C. §§ 2701 & 2707), THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030), AND DEFAMATION (NRS § 200.510)**<br><br>**JURY DEMAND** |

<u>**COMPLAINT FOR VIOLATIONS OF**</u>
<u>**THE STORED COMMUNICATIONS ACT (18 U.S.C. § 2701),**</u>
<u>**THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030),**</u>
<u>**AND DEFAMATION (NRS § 200.510)**</u>

## I.   INTRODUCTION

This Complaint is filed by Mikhail Education Corporation, a Nevada corporation (the "Corporation"), and Mikhail Family Partnership, a Nevada general partnership (the "Partnership"), (collectively "Mikhail") against the Corporation's former employee, Mr. Michael Gerard Naessens ("Mr. Naessens"). The Corporation operates five (5) private-post secondary educations institutions through its subsidiaries and is regulated under federal law.

Mr. Naessens was hired to be the controller of Mikhail in July 2022. Mr. Naessens abruptly left work on Friday, September 23, 2022. During his tenure with Mikhail, Mr. Naessens established backdoor access to Mikhail's QuickBooks program to allow him to remotely access Mikhail's financial information and accounts from his personal QuickBooks account and his personal computer. He linked his access to Mikhail's program to his personal Gmail account. He also used this backdoor access to make himself the primary administrator for QuickBooks asserting complete unfettered control over Mikhail's program.

Mr. Naessens used his backdoor access to Mikhail's QuickBooks program to edit the information for multiple vendors and clients. He changed some client names to "Hold for Payment MEC MFP 1" and "Sapio HIPPA ADA Violations 1."[1] He also deleted other Mikhail employees as authorized users in QuickBooks.

Mikhail believes that Mr. Naessens utilized his unfettered control over QuickBooks to transfer funds from Mikhail's bank accounts to accounts owned by Mr. Naessens. There are documented transfers from the Corporation's account to Mr. Naessens' PayPal account. He also accessed several other payment portals numerous times from his work computer. At this time, Mikhail is undertaking forensic investigation of Mr. Naessens' work computer, Mikhail's

---

[1] Paul Sapio is Mikhail's Vice President of IT.

QuickBooks programs, and its associated bank accounts to uncover the full extent of the theft and cyber fraud. Mikhail brings civil suit under the Stored Communications Act (18 U.S.C. § 2701) and the Computer Fraud and Abuse Act (18 U.S.C. § 1030) based on Mr. Naessens' unauthorized access or access in excess of the authority granted to him for Mikhail's computer systems and programs.

Mikhail also brings a state law claim against Mr. Naessens for defamation (NRS § 200.510) under supplemental jurisdiction because it arises out of a common nucleus of operative facts. On Saturday, September 24, 2022, the day after his abrupt departure from work, Mr. Naessens sent an email to Jerry Leach of the Nevada Department of Employment, Training, and Rehabilitation ("NV DETR") asserting a variety of improper acts by Mikhail, the most malicious of which alleged Mikhail had made $10 million of illegal campaign finance donations using federal financial aid money. This statement is false. Such contributions would be illegal and as a result, Mr. Naessens libeled his employer by imputing illegal acts and such acts harm the reputation of the schools operated by the Corporation.

## II.   JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 with respect to the claims under the Stored Communications Act, 18 U.S.C. § 2701, and under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

2.      This Court has supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367, subsection (a) with respect to the defamation claim that is associated with a common nucleus of operative facts.

3.      Mikhail's primary place of business is located in Las Vegas, Nevada.

4.      Mr. Naessens' home address is located in Las Vegas, Nevada.

5.      Mr. Naessens worked at the Corporation's primary place of business in Las Vegas, Nevada.

6.      Venue is proper in the District of Nevada, and within the unofficial Southern Division based on the residence of both parties and the operative facts having occurred in Las Vegas.

### III.   PARTIES

7.      The Corporation is a Nevada corporation that operates multiple post-secondary educational institutions in Nevada, California, and Texas.

8.      The Partnership is a Nevada general partnership that conducts business in Nevada and California.

9.      Mr. Naessens is an individual hired by Mikhail to be its controller. He received an MBA from Drexel University in 1995 and is a licensed CPA (NV # CPA-6137R) and Notary Public. As a controller for Mikhail, Mr. Naessens had access to Mikhail's QuickBooks program, computer systems, and financial systems.

### IV.   FACTUAL ALLEGATIONS

10.     On July 11, 2022, Mikhail hired Mr. Naessens as its controller which is an at-will position. Mikhail maintains employment policies regulating the use of its computer systems and computer programs. Mr. Naessens' acknowledge these policies when he was hired. Some of those policies are:

a.  Communication tools furnished to employees are Mikhail's property and are intended for business use;

b.  Internet/Intranet/Extranet-related systems, including but not limited to, computer equipment, software, operating systems, storage media, network accounts providing electronic mail, and World Wide Web browsing, are the property of the Mikhail;

c.  Mikhail reserves the right to monitor and examine all communications over these systems at its discretion. Accordingly, no employee should have any expectation of privacy as to his or her Internet or technology systems usage and should not use these systems for information they wish to keep private;

d. Federal and State law and Mikhail policies regarding intellectual property, misuse of company property, discrimination, harassment, sexual harassment, information and data security and confidentiality apply to the use of all the company technology systems;

e. Penetrating computer or network security or gaining access to any other person's computer, voice mail, e-mail accounts, or equipment is prohibited;

f. Use of Mikhail's information systems for personal gain is prohibited; and

g. Mikhail uses only software and applications that are properly acquired and licensed. No employee shall install or download software or applications on any company computer without prior written authorization of the Campus Director or the CEO. Unauthorized duplication, distribution, or disclosure of software or applications and their accompanying printed materials violates both license agreements and federal law and may result in disciplinary action, up to and including discharge.

11. When Mr. Naessens was hired, he was issued a work email with Mikhail's domain (mikhailed.com). The Corporation issues each of its employees a mikhailed.com email address to use for their work. Mikhail prohibits the use of personal email addresses to perform business tasks.

12. During his employment, from his Mikhail, work-computer, Mr. Naessens used a remote access program, Splashtop, to remotely connect to two computers he owns. He owns the Splashtop account he used for this remote access. Mr. Naessens used Splashtop as the remote access program because Mikhail uses Splashtop as a program in its business activities.  This enabled Mr. Naessens to camouflage his remote access activity among Mikhail's other employees' remote access activities.  Mr. Naessens regularly used his Splashtop account to access his personal computers during business hours.

13. During his tenure at Mikhail, Mr. Naessens also established backdoor access to Mikhail's QuickBooks program to grant himself remote access to Mikhail's financial information and accounts. Mr. Naessens used his personal QuickBooks account and his personal computer for this backdoor access. He linked his access to Mikhail's program to his personal Gmail account and

an email address with the domain name "naessens.com." He also used this backdoor access to make himself the primary administrator for Mikhail's QuickBooks program whereby he asserted complete and unfettered control over the financial program.

14.     On September 23, 2022, Mr. Naessens abruptly left Mikhail's office. For several days after that, he used his backdoor access to manipulate Mikhail's QuickBooks program. The QuickBooks logs show Mr. Naessens accessing Mikhail's program multiple times daily since exiting the office. On the surface, Mikhail has learned at minimum, Mr. Naessens edited the information for multiple vendors and clients. He changed some client names to "Hold for Payment MEC MFP 1" and "Sapio HIPPA ADA Violations 1." He also deleted other Mikhail employees as authorized users in QuickBooks.

15.     Also, on September 23, 2022, Mikhail learned that company funds had been transferred to a personal account owned Mr. Naessens. Those transfers were to a PayPal account owned by Mr. Naessens. Between September 20, 2022, and September 23, 2022, Mr. Naessens used his work computer to access his PayPal account forty-six (46) times. He also accessed his Venmo account eight (8) times from his work computer between that time period. Mr. Naessens also accessed a payment portal called Meliopayments while employed by Mikhail. Mikhail has not been able to determine the exact times, or the full amount of Mikhail's money Mr. Naessens has transferred to his personal accounts.

16.     Upon discovering these actions, Mikhail's IT staff immediately began lock-out procedures, securing known access to Mikhail systems and programs while also investigating other improprieties committed by Mr. Naessens.

17.     On September 24, 2022, the day after he  abruptly left work, Mr. Naessens sent an email to Jerry Leach at the NV DETR in which he presented multiple false allegations against Mikhail. In that email, Mr. Naessens libeled Mikhail when he asserted "$10 million of unbudgeted spending for hidden political contributions masked with ghost employees using Federal Financial Aid money" had been made by Mikhail.

18.     As of September 29, 2022, Mikhail had locked Mr. Naessens out of its QuickBooks program. On September 30, 2022, Mr. Naessens was terminated.

19.     The investigation into Mr. Naessens' actions continues with the hiring of a forensic computer analyst and ongoing forensic accounting to determine the extent of Mr. Naessens' actions.

## FIRST CAUSE OF ACTION
### VIOLATION OF THE STORED COMMUNICATIONS ACT
### (18 U.S.C. §§ 2701 & 2707)

20.     Mikhail refers to the allegations contained in paragraphs 1 through 19, inclusive, and incorporates those allegations herein as though fully set forth.

21.     Mr. Naessens accessed Mikhail's computer systems and programs using his personal email addresses and computer programs he owned, both of which were prohibited methods of access.

22.     With malicious intent and in excess of the authority granted him by Mikhail, Mr. Naessens edited the records of Mikhail QuickBooks program and other computer systems to make them contain false information.

23.     At minimum, Mr. Naessens caused the computer and information systems of Mikhail to transfer funds to his personal PayPal account.

24.     Mikhail brings a civil claim against Mr. Naessens for violations of the Stored Communications Act pursuant to 18 U.S.C. § 2707.

25.     Mikhail brings this action within the two-year statute of limitations.

26.     Mr. Naessens was not authorized to  transfer corporate funds to his personal account, thus intentionally accessing a computer in excess of his authorization, constitute violation of the Stored Communications Act. He was not authorized to edit the records of Mikhail's computer programs to make them contain false information.

27.     On information and belief, Mikhail believes the amounts transferred exceed $5,000, as required by the Computer Fraud and Abuse Act.

28. Mikhail seeks compensation for its actual harm, including return of the monies Mr. Naessens stole; the costs to investigate remediate, and repair any damage caused by Mr. Naessens violation of the Act; and costs to bring this suit are part of the actual damages incurred by Mikhail.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**
**(18 U.S.C. § 1030)**

29. Mikhail refers to the allegations contained in paragraphs 1 through 28, inclusive, and incorporates those allegations herein as though fully set forth.

30. Mr. Naessens intentionally accessed the systems of Mikhail and by undertaking acts he was not authorized to undertake, he caused funds to be transferred to a personal PayPal account and caused the information in Mikhail's computer programs to be false and incorrect.

31. On information and belief, Mikhail believes Mr. Naessens accessed the systems of Mikhail improperly on multiple occasions and Mikhail's investigation will uncover additional transactions totaling more than $5,000. Mikhail will also determine the full extent of falsified records created by Mr. Naessens in Mikhail's computer systems and programs.

32. The systems of Mikhail are used in interstate commerce as Mikhail operates post-secondary educational institutions in Nevada, Texas, and California.

33. Mikhail brings this civil action within the two-year statute of limitations.

34. Mikhail seeks compensation for its actual harm, including return of the monies Mr. Naessens stole; the costs to investigate remediate, and repair any damage caused by Mr. Naessens violation of the Act; and costs to bring this suit are part of the actual damages incurred by Mikhail.

**THIRD CAUSE OF ACTION**
**DEFAMATION**
**(NRS § 200.510)**

35. Plaintiff refers to the allegations contained in paragraphs 1 through 34, inclusive, and incorporates those allegations herein as though fully set forth.

36. Mr. Naessens maliciously defamed Mikhail by impeaching the honesty, integrity, virtue, and reputation of Mikhail when he communicated falsehoods to a Nevada state agency.

37. Mr. Naessens knew the statement he made to be untrue.

38.     Mr. Naessens published the statement to a Nevada state agency, with the intent that his statement become public knowledge and to harm the interests and public standing of Mikhail.

39.     Mr. Naessens was not authorized to make the false statement.

40.     The statement is one that would cause a normal reader to believe that Mikhail has committed a crime – unlawful campaign contributions utilizing federal student aid funds.

41.     The false statement is one that includes imputations that would injure Mikhail's ability to enroll students and harm its business reputation.

42.     A libel is a malicious defamation, expressed by printing, writing, signs, pictures or the like, tending to impeach the honesty, integrity, virtue, or reputation, or to publish the natural defects of a living person or persons, or community of persons, or association of persons, and thereby to expose them to public hatred, contempt, or ridicule.

43.     Mikhail has suffered actual damages in the need to respond to these allegations. These damages may grow during the pendency of this trial based on how widespread the defamatory statement becomes. Mikhail has already invested legal resources in fighting this statement and any expense related to an investigation by the State of Nevada shall be part of the actual damages.

## PRAYER FOR DAMAGES AND RELIEF SOUGHT

**WHEREFORE**, Mikhail, prays that:

1.     It be awarded compensatory damages for the actual harm caused by Mr. Naessens' violation of the Stored Communications Act, including all ancillary costs incurred in remediating, mitigating, and repairing the harm caused;

2.     It be awarded compensatory damages for the actual harm caused by Mr. Naessens' violation of the Computer Fraud and Abuse Act, including all ancillary costs incurred in remediating, mitigating, and repairing the harm caused;

3.     It be awarded compensatory damages for the actual harm caused by Mr. Naessens' defamation of Mikhail, including all ancillary costs incurred in remediating, mitigating, and repairing the harm caused;

4.      For compensation for the time and money properly expended in pursuit of the recovery of funds, including attorney fees;

5.      For punitive and treble damages;

6.      For costs of suit herein incurred; and

7.      For other and further relief as the Court may deem proper.

## **JURY DEMAND**

Mikhail hereby demands a trial by an impartial and dutiful jury on all issues triable as of by law and right.

DATED: October 7, 2022,                    **KDH LAW**


By:    /s/ Karl A. Schweikert
Karl A. Schweikert, Esq.
Nevada Bar No. 13756, California Bar No. 291497
2101 Stone Blvd., Suite 115
West Sacramento, CA 95691

Attorneys for Plaintiffs MIKHAIL EDUCATION
CORPORATION and MIKHAIL FAMILY
PARTNERSHIP